UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Bernard M. McPheely, *Trustee for the Bernard M. McPheely Revocable Trust Dated May 25, 2012*; Thomas P. Hartness, *Trustee for the Thomas P. Hartness Revocable Trust Dated July 31, 2010*; Brian McPheely; and Robert Daisley,<br><br>    Plaintiffs,<br><br>    v.<br><br>Edward S. Adams; Michael R. Monahan; Robert Linares; Theodorus Strous; and Adams Monahan LLP,<br><br>    Defendants,<br><br>    and<br><br>Scio Diamond Technology Corporation, Inc., *a Nevada corporation*,<br><br>    Nominal Defendant. | C/A No.: 6:13-cv-02660-GRA<br><br>**ORDER**<br>(Written Opinion) |

  This matter comes before this Court on Defendants' Motion to Dismiss all the claims asserted by Plaintiffs in the Verified Shareholder Derivative Complaint[1] filed in the above-captioned action (the "McPheely Action"), or alternatively, to submit the McPheely Action to arbitration. For the reasons stated herein, this Court grants Defendants' Motion in part and submits the remaining claims to arbitration.

---

[1] In this Court's opinion, the Complaint is poorly edited. It appears that the Complaint is a nearly identical copy of other complaints filed in prior lawsuits in the District of Minnesota. By way of example, the Complaint references "Plaintiffs" who are not plaintiffs in the current lawsuit. This Court cautions Plaintiffs' counsel to read and edit their complaints prior to submitting them in this District. This Court also directs counsel's attention to Federal Rule of Civil Procedure 11(b).

**Background[2]**

Plaintiffs are shareholders in the Nominal Defendant, Scio Diamond Technology Corporation, Inc. ("Scio" or "the Company"), a publicly traded company organized under the laws of the State of Nevada with its principle place of business located in Greenville, South Carolina. Scio is a synthetic diamond manufacturer that produces single-crystal diamonds for gemstone and industrial applications. Scio's predecessor was Apollo Diamond, Inc. ("Apollo Diamond"). Apollo Diamond, originally known as Linares Management Associates, was founded by Defendant Linares in 1990. Linares' son-in-law, Defendant Adams, was an officer of Apollo Diamond's subsidiary, Apollo Gemstone Corporation ("Apollo Gemstone"), and is now a director of Scio. Defendant Monahan was an officer of Apollo Gemstone, and a partner of Adams at Defendant Adams Monahan, LLP. Adams Monahan, LLP is a law firm that provided legal services to Apollo Diamond and Scio.

In early 2011, Loblolly, Inc., previously known as Scio Diamond Technology Corporation ("Private Scio"), was formed under the laws of Nevada for the purpose of facilitating the restructuring of Apollo Diamond. Apollo Diamond entered into an asset purchase agreement with Private Scio, whereby Private Scio would acquire the right to purchase substantially all of Apollo Diamond's assets. Apollo Diamond stockholders voted to approve the proposed transaction. In August 2011, Private Scio sold to Scio substantially all of its assets, properties and rights, including the right to acquire the assets of Apollo Diamond on the terms approved by its shareholders. Scio exercised its right to acquire Apollo Diamond's assets on August

---

[2] The facts recited here are derived from the Complaint and from the parties' submissions.

31, 2011. As a result of these transactions, Scio held the assets of Apollo Diamond, and Apollo Diamond's common stockholders held the right to purchase Scio shares.

On July 26, 2013, Plaintiffs filed a shareholder derivative action suit on behalf of Scio and its shareholders in the South Carolina Court of Common Pleas in Greenville County. This lawsuit, filed against certain former and current board members of Scio and against Scio's outside counsel, alleges that Defendants engaged in acts and participated in a scheme to further their own personal interests to the detriment of the Company and its shareholders. The Complaint alleges that Defendants breached their fiduciary duties to Scio, engaged in corporate waste, were involved in a civil conspiracy, and were unjustly enriched because Defendants engaged in self-dealing and self-interested transactions. In particular, the Complaint alleges that three legal entities—Apollo Diamond, Private Scio, and Scio—were created and used by Defendants as part of their scheme. The Complaint further alleges that Defendants Adams, Monahan, and their law firm, Adams Monahan, LLP, solicited funds and used their position as controlling directors, controlling shareholders, attorneys, and brokers to extract funds from Scio and to increase their ownership interest in the Company through transactions which they engineered for their own self-interest and at the expense of Scio and its other shareholders. As part of their scheme, Defendants allegedly used the corporate form and their control of the corporation to make distributions to themselves rather than Scio, to indemnify themselves personally for unrelated matters, and to divert Scio's revenues for their own pecuniary gain.

The Complaint further alleges that Plaintiffs became shareholders of Scio stock between June 1, 2012 and September 27, 2012.  To acquire Scio stock, each Plaintiff entered into a "Subscription Agreement" with the Company, which detailed the terms and conditions of stock acquisition.  The Subscription Agreement incorporates by reference a "Warrant" entitling each Plaintiff to purchase a specified number of Scio stock at a fixed price.  The first page of the Subscription Agreement provides in bold capital letters that it is subject to arbitration pursuant to state and federal law.  Additionally, Paragraph 8 of the Subscription Agreement contains the following sentence:

> The dispute resolution provisions set forth in Section 15 of the Warrant attached hereto shall apply, *mutatis mutandis*, with respect to this Agreement, including, without limitation, the Mandatory Arbitration and the Exclusive Selection of Forum provisions thereof.  All representations, warranties, and covenants contained in this Agreement will survive the acceptance of this Agreement and the sale of the Units.

Moreover, the Dispute Resolution provision set forth in Section 15 of the Warrant contains, in pertinent part, the following arbitration clause:

> (E)     <u>Mandatory Arbitration</u>.
>
> (i)     Upon demand of any Party (whether made before or after institution of any judicial proceeding), any dispute shall be referred to arbitration, and the final decision rendered shall be binding upon the Parties to this Agreement. Disputes include, without limitation, tort claims, counterclaims, securities law claims, contract claims, disputes as to whether a matter is subject to binding arbitration, claims brought as class actions, or claims arising out of or connected with any transaction reflected by any Warrant.

After the Plaintiffs filed the Complaint in state court, Defendants filed a notice of removal based on diversity jurisdiction under 28 U.S.C. § 1332 on September 27, 2013.  ECF No. 1.  On October 4, 2013, Defendants then filed their Motion to Dismiss

Plaintiffs' Complaint and Memorandum in Support of the Motion asserting that dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted; that Plaintiffs have failed to plead with particularity an acceptable reason for failing to make demand of the directors or allege the futility of such demand, as required by Fed. R. Civ. P. 23.1; and that Plaintiffs overlooked the mandatory arbitration provisions contained in their Subscription Agreements. ECF Nos. 16–18. This Court held a status conference hearing on October 17, 2013. ECF No. 27. Plaintiffs filed their Response in Opposition on October 28, 2013. ECF No. 29. Defendants filed a Reply on November 4, 2013. ECF Nos. 34–35.

## Standard of Review

Defendants have moved to dismiss for failure to state a claim or, in the alternative, to submit the case to arbitration, pursuant to the arbitration provision contained in each of the Subscription Agreements. Motions to dismiss for failure to state a claim are authorized by Federal Rule of Civil Procedure 12(b)(6). To be legally sufficient, the Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary—the statement need only give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co., Inc.*, 551

F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 569). Accordingly, a complaint does not require detailed facts; however, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, a complaint is insufficient if it provides only bare assertions lacking additional factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Although its review is generally limited to the contents of the complaint, when ruling on a motion to dismiss pursuant to Rule 12(b)(6) the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("[A] court may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic."); *see also Joyner v. GE Healthcare*, C.A. No. 4:08-2563-TLW-TER, 2009 WL 3063040, at *2 (D.S.C. Sept. 18, 2009) ("[T]he Court may consider materials outside the pleadings to determine whether a valid arbitration agreement exists.").

## Discussion

### I.     Contemporaneous Ownership Requirement

Federal Rule of Civil Procedure 23.1 requires that in a shareholder derivative case the complaint must "allege that the plaintiff was a shareholder . . . at the time of the transaction complained of." Fed. R. Civ. P. 23.1(b)(1). Stock ownership at the time of the challenged conduct—commonly referred to as the "contemporaneous ownership" requirement of Rule 23.1—is a prerequisite to maintaining a derivative action. 7C Charles Alan Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and*

*Procedure Civil* § 1828 (3d ed. 2007). A plaintiff who fails to satisfy the contemporaneous ownership requirement lacks standing to bring a shareholder derivative suit. *See id.; Aeronca, Inc. v. Style-Crafters, Inc.*, 499 F.2d 1367, 1373–74 (4th Cir. 1974); *Kaliski v. Bacot*, 320 F.3d 291, 299 (2d Cir. 2003); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ("A derivative plaintiff has no standing to challenge option transactions that occurred prior to the time that plaintiff owned company stock.").

In the Complaint, Plaintiffs allege that they first purchased shares of Scio between June 1, 2012 and September 27, 2012. Further, none of the Plaintiffs allege stock ownership of Apollo Diamond or Private Scio. The Complaint, however, is largely based on alleged wrongdoing that occurred prior to June 2012. Very few of the allegations concerning wrongdoing occurred after June 1, 2012, the earliest date that a plaintiff became a shareholder of Scio.

Plaintiffs, however, argue that the "continuing wrong" doctrine excuses their failure to satisfy the contemporaneous ownership requirement. Plaintiffs primarily find support for their position from the Fifth Circuit. *See Bateson v. Magna Oil Corp.*, 414 F.2d 128, 130 (5th Cir. 1969) (holding that wrongs complained of in stockholder's derivative suit occurring prior to plaintiff's acquisition of stock were "continuing wrongs" allowing plaintiff to meet the requirements of Rule 23.1); *Palmer v. Morris*, 316 F.2d 649 (5th Cir. 1963); *In re Penn. Cent. Transp. Co.*, 341 F. Supp. 845, 846 (E.D. Pa. 1972) (granting standing to a plaintiff who did not own shares in the corporation at the time that the wrongful transaction was undertaken because the transaction was a continuing wrong). This Court is unable to find support in this

Circuit that the continuing wrong exception is applicable. The "prevailing view" from other Courts of Appeals is to construe the exception narrowly. 7C Wright, *et al.*, *Federal Practice and Procedure Civil* § 1828 (3d ed. 2007); *see also Kaliski v. Bacot*, 320 F.3d 291, 298 (2d Cir. 2003); *Blasband v. Rales*, 971 F.2d 1034, 1046 (3d Cir. 1992) ("federal courts generally have rejected the contention that the entire series of events constitutes a single transaction—the so-called "continuing wrong" notion— entitling plaintiff to bring suit for injuries suffered by the corporation prior to plaintiff's acquisition of stock" (quoting 7C Wright, *et al.*, *Federal Practice and Procedure* § 1828, at 65 (2d ed. 1986))); *Herald Co. v. Seawell*, 472 F.2d 1081, 1098 (10th Cir. 1972); *Weinhaus v. Gale*, 237 F.2d 197, 200 (7th Cir. 1956); *Henis v. Compania Agricola de Guatemala*, 210 F.2d 950 (3d Cir. 1954); *Silverstein v. Knief*, 843 F. Supp. 2d 441 (S.D.N.Y. 2012); *Sprando v. Hart*, No. 3:10-cv-415-ECR-VPC, 2011 WL 3055242 (D. Nev. July 22, 2011). Accordingly, Plaintiffs lack standing to challenge any transaction prior to June 2012.

**II.     Pre-Suit Demand Requirement**

Under Federal Rule of Civil Procedure 23.1, a shareholder seeking to vindicate the interests of a corporation through a derivative suit must either first make a demand on the corporation's directors, or plead particularized facts showing why such a demand would have been futile. *See* Fed. R. Civ. P. 23.1(b)(3). "The director demand requirement is premised on the 'basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors,' not the shareholders." *In re Capital One Derivative S'holder Litig.*, No. 1:12CV1100, 2013 WL 3242685, at *14 (E.D. Va. June 21, 2013)

(quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S 90, 101 (1991)). Because Plaintiffs' claims in the McPheely Action are derivative, Plaintiffs were required to make a demand on Scio's board, or show with particularity that demand would have been futile.

State law establishes the circumstances under which demand would be futile. *See Kamen*, 500 U.S. at 108–09. Thus, because Scio is a Nevada corporation, Nevada law governs the issue of whether Plaintiffs' failure to make a pre-suit demand on Scio's board is excused. "Nevada courts look to Delaware law for guidance on requirements for pleading demand futility." *Israni v. Bittman*, 473 F. App'x 548, 549 (9th Cir. 2012) (unpublished); *see also Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008). Where a board of directors is alleged to have made a conscious business decision in breach of its fiduciary duties, under Delaware law, plaintiffs must plead "particularized facts establishing a reason to doubt that 'the board of directors is disinterested and independent.'" *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008) (quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)); *see also Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 (Nev. 2006). "When pleading demand futility, 'plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged.' . . . The pleader need not plead evidence, but he must set forth 'particularized factual statements that are essential to the claim.'" *Lynch v. Rawls*, 429 F. App'x 641, 644 (9th Cir. 2011) (unpublished) (quoting *Brehm v. Eisner*, 746 A.2d 244, 254–55 (Del. 2000)).

It is the plaintiff's burden in a derivative action to overcome the "key principle" that "directors are entitled to a *presumption* that they were faithful to their fiduciary

duties." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) (emphasis in original).  As a result, the shareholder plaintiff must make this showing with respect to at least half the voting members of the board. *Aronson*, 473 A.2d at 814–15; *see also Shoen*, 137 P.3d at 1175 (Under Nevada law, "the demand requirement will be excused as futile only when particularized pleadings show that at least fifty percent of the directors considering the demand for corrective action would be unable to act impartially.").  "[T]he demand requirement is excused without further inquiry if the complaint's allegations, taken as true and with all fair inferences drawn in favor of the plaintiff, show that the protection afforded by 'the business judgment rule is inapplicable to the board majority approving the transaction' because those directors are interested, or are controlled by another who is interested, in the subject transaction. . . ." *Shoen*, 137 P.3d at 1182 (quoting *Aronson*, 473 A.2d at 814–15).

"[A] plaintiff challenging a business decision and asserting demand futility must sufficiently show that . . . the board is incapable of invoking the business judgment rule's protections (*e.g.*, because the directors are financially or otherwise interested in the challenged transaction). . . ." *Shoen*, 137 P.3d at 1181.  Directorial "interest" exists where the director "stands to gain or lose personally and materially from the board's decision." *Mercier v. Blankenship*, 662 F. Supp. 2d 562, 575 (S.D.W. Va. 2009).  Director "independence" exists when the decision by the director is based on "the corporate merits of the subject before the board" and not on "extraneous considerations or influences." *Aronson*, 473 A.2d at 816.  "For example, a director who has divided loyalties in relation to, or who has or is entitled to receive specific

financial benefit from, the subject transaction, is an interested director." *Shoen*, 137 P.3d at 1182. "[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815. Instead, as the Delaware courts have indicated, a shareholder plaintiff must demonstrate that the directors' actions were so egregious that "a substantial likelihood of director liability" exists. *Id.*

"'Control' refers to the influences upon the directors' performance of their duties generally, and more specifically in respect to the challenged transaction." *Shoen*, 137 P.3d at 1182 (internal citation omitted). "Theoretically, a director can be 'controlled' by another, for purposes of determining whether the director lacked the independence necessary to consider the challenged transaction objectively. A controlled director is one who is dominated by another party, whether through close personal or familial relationship or through force of will." *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002) (internal citations omitted); *see also In re Computer Scis Corp. Derivative Litig.*, 244 F.R.D. 580, 586 (C.D. Cal. 2007) (asserting that interestedness or a lack of independence may be shown by particularized facts in the pleadings indicating "that the board is either dominated by an officer or director who is the proponent of the challenged transaction, perhaps by a close personal or familial relationship or by force of will, or that the board is so under the director['s] influence that its discretion is 'sterilized.'").

In this case, Plaintiffs acknowledge that they did not make any demand of the Scio board prior to filing the present lawsuit. Thus, in order for Plaintiffs to survive Defendants' Motion to Dismiss, this Court must find that Plaintiffs particularized

factual allegations create a reasonable doubt as to the disinterestedness and independence of at least two of Scio's three board members. Plaintiffs allege, and Defendants do not dispute, that Defendant Adams is an interested director, and thus would not have been capable of impartially and objectively considering a demand. However, Defendants argue that the remaining two members of the Scio Board, Linares and Strous, have no disabling characteristics and can independently and impartially consider a demand. Accordingly, to address the issue of demand futility, this Court must determine whether the Complaint provides a reason to doubt the impartiality of either Linares[3] or Strous.

In their submissions to this Court, Plaintiffs and Defendants mainly argue over the status of director Linares. Plaintiffs contend that Linares' objectivity is in serious doubt because of his familial and business relationships with Scio. Defendants argue that Linares is not so obliged to Scio as to make it doubtful that Linares can impartially consider a demand. Defendants argue that Linares' legal relationship to Adams does not compromise his ability to act impartially, and contend that Plaintiffs' particularized pleadings fail to demonstrate why the relationship creates a reasonable doubt as to Linares' disinterestedness. Defendants also argue that Linares' appointment to the Scio board does not demonstrate partiality because he was appointed due to his expertise in the diamond industry.

This Court harbors a reasonable doubt about Linares' ability to impartially consider a demand. Linares' business relationship with Scio is the main reason this

---

[3] In their Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiffs allege that Defendant Linares was improperly added to Scio's Board. ECF 29 at 23. For purposes of this order, this Court will consider Linares to be one of Scio's directors.

Court doubts Linares' ability to consider a demand impartially. Linares' ties to Scio are such that it is unreasonable to believe that Linares could objectively consider the approval of such a suit against Scio. Linares' business relationship with Scio extends back over 20 years. He founded Apollo Diamond, which developed the proprietary technology acquired and utilized by Scio. In addition, Linares is the former chairman and Chief Executive Officer of Apollo Diamond and Apollo Gemstone. He was involved in Scio's asset purchases of Apollo Diamond and Apollo Gemstone. This long-standing pattern of mutually advantageous business relations makes this Court doubt that Linares could impartially evaluate Plaintiffs' claims.

Furthermore, the fact that Linares also happens to be Adams' father-in-law makes this Court doubt Linares' impartiality. Family relationships can create a reasonable doubt as to impartiality. *See, e.g., Grimes v. Donald*, 673 A.2d 1207, 1216 (Del. 1996) (noting that a "material financial or familial interest" may justify a claim of demand futility), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 889 (Del. Ch. 1999); *In re Cooper Co.*, No. 12584, 2000 WL 1664167 (Del. Ch. Oct 31, 2000) (noting that it was undisputed by the parties that the father-in-law/son-in-law relationship created a reasonable doubt regarding the director's impartiality); *Chaffin v. GNI Group, Inc.*, 1999 WL 721569 (Del. Ch. Sept 3, 1999) ("[M]ost parents would find it highly difficult, if not impossible, to maintain a completely neutral, disinterested position on an issue, where his or her own child would benefit substantially if the parent decides the issue a certain way."); *Mizel v. Connelly*, No. 16638, 1999 WL 550369, at *4 (Del. Ch. July 22, 1999) ("The existence of a very close family

relationship between directors should, without more, generally go a long (if not the whole) way toward creating a reasonable doubt.")  "The plaintiff bears no burden to plead facts demonstrating that directors who are closely related have no history of discord or enmity that renders the natural inference of mutual loyalty and affection unreasonable."  *Harbor Finance Partners*, 751 A.2d at 889.  Even if such a burden were to exist, Plaintiffs have met it here.  Adams and Linares have invested together, engaged in several business transactions together, and worked diligently together for several years.  Their relationship clearly does not appear to be one of strife.  "Even if it were, many people swallow their actual views of their in-laws for the sake of their spouses (and for the self-interested reason of avoiding marital strife)."  *Id.*  Moreover, the fact that Linares' daughter would be harmed if Linares considered a demand and made a decision adverse to Adams provides further evidence as to his lack of impartiality.

Because Plaintiffs have pled facts that cause this Court to harbor a reasonable doubt about Linares' ability to impartially consider a demand, and Defendants admit that director Adams cannot impartially evaluate a demand, this Court holds that the demand requirement under Rule 23.1 is excused.  This Court will not address the interestedness and independence of director Strous because Plaintiffs have sufficiently pled demand futility as to a majority of the directors.

**III.     Remaining Claims are Subject to Arbitration**

The United States Supreme Court has made clear that federal policy favors arbitration and that arbitration clauses should be enforced.  *See, e.g., Mitsubishi Motors Corp. v. Selex Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) ("The Arbitration

Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."). Similarly, the Fourth Circuit has repeatedly compelled arbitration where, as here, the arbitration clause applies to any dispute "arising from or related to" the agreement. *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001); *Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262, 265–66 (4th Cir. 2000); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996). In doing so, the Fourth Circuit has followed *Mitsubishi Motors*, where the clause in question provided for the arbitration of all disputes "which may arise between [the parties] out of or in relation to" the parties agreement. 473 U.S. at 617. This type of arbitration language is considered "broad." *See Am. Recovery Corp.*, 96 F.3d at 93; *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988). This Circuit follows the rule that "a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Long*, 248 F.3d at 316 (citing *Am. Recovery Corp.*, 96 F.3d at 93). Section 15 of the Warrant, which is incorporated by reference into the Subscription Agreement signed by Plaintiffs entitling them to purchase a specified number of shares of Scio stock, encompasses "any" dispute "arising out of, connected with, or relating to" the Plaintiffs' acquisition of Scio stock. ECF No. 17-7. A review of the record clearly reflects the existence of a significant relationship between the claims in this dispute and the Subscription Agreements.

Plaintiffs assert claims for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, corporate waste, civil conspiracy, and unjust enrichment against Defendants. Plaintiffs' first and second causes of action request compensatory damages from Defendants for breaching, or aiding and abetting a breach of, their fiduciary duties of care and loyalty. Count three asks this Court to create a constructive trust in favor of Scio as a result of Defendants alleged usurpation of corporate opportunities. Count four alleges that Defendants Adams and Monahan conspired together to injure Scio. The fifth cause of action requests recovery of the amount Defendants were unjustly enriched as a result of their self-dealing and self-interested transactions and demands restitution, return of Scio shares, and the creation of a constructive trust. Counts six and seven call for compensatory damages from Defendants for breaching, or aiding and abetting the breach of, their fiduciary duties of controlling shareholders. The final cause of action requests compensatory damages from Defendant Adams Monahan, LLP for breach of fiduciary duty. The record, viewed in its entirety, reflects the significance of the parties' relationship as directors and shareholders of Scio and the purchase of Scio stock in 2012. This Court finds the evidence clearly establishes that each claim is significantly related to the Subscription Agreement. The current derivative claims arise out of the Subscription Agreements because these agreements made possible Plaintiffs' ownership of Scio stock and standing to bring their case; thus, the Subscription Agreements are significantly related to the present dispute.

To avoid this conclusion, Plaintiffs contend that they should not be required to arbitrate because the moving Defendants are not parties to the Subscription

Agreements. "A court may compel arbitration of a particular dispute only when the parties have agreed to arbitrate their dispute and the scope of the parties' agreement permits resolution of the dispute at issue." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). In general, "arbitration is a matter of contract [interpretation] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "It is well-established, however, that a non-signatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the non-signatory despite the fact that the signatory and non-signatory lack an agreement to arbitrate." *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). Furthermore, the Fourth Circuit has held, in a derivative claim brought by a plaintiff against non-signatories to a contract, that non-signatory officers and directors may utilize a corporation's agreement to arbitrate where, as here, those officers and directors control the activities of the corporation. *Long*, 248 F.3d at 319–21; *see also Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (holding that non-signatory corporate officers sued in their individual capacity could, under agency principles, invoke the arbitration agreement between the plaintiff and the corporate defendant for conduct that occurred during their official corporate duties and capacities); *Benefits in a Card, LLC v. TALX Corp.*, No. 6:06-cv-03655-GRA, 2007 WL 750638, at *10 (D.S.C. Mar. 7, 2007) (noting that "a non-signatory officer of a signatory corporation may compel arbitration when the disputed actions are intertwined with his duties to

the corporation"); *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 562 (M.D.N.C. 2004) (concluding non-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under principles of contract and agency law).  Defendants are former and current Scio directors and outside counsel.  Because the claims against Defendants stem from their actions taken as directors, officers, or agents of Scio, Defendants may invoke the arbitration provision in the Subscription Agreement to compel Plaintiffs to arbitrate.

## Conclusion

This Court has reviewed the parties' filings and carefully considered their arguments and the relevant legal authority.  For all of the foregoing reasons, this Court finds that (1) Plaintiffs lack standing to challenge any event prior to June 2012, (2) Plaintiffs adequately pled demand futility, and (3) Plaintiffs are bound by the arbitration provision in the Subscription Agreement.

**IT IS THEREFORE ORDERED** that Defendants' Motion is GRANTED in part and DENIED in part.  Plaintiffs shall be required to pursue the McPheely Action by way of arbitration.

**IT IS FURTHER ORDERED** that the McPheely Action be DISMISSED *without prejudice* to the right of either party to refile following arbitration in order to enforce the award of the arbitrators.

**IT IS SO ORDERED**.

G. Ross Anderson, Jr.
Senior United States District Judge

December 16, 2013
Anderson, South Carolina